**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL DOCKET NO.: 5:14CV139-RLV**

| | | |
|---|---|---|
| **PLS INVESTMENTS, LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Memorandum and Order** |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** | ) | |
| **HSBC BANK USA, NATIONAL** | ) | |
| **ASSOCIATON, as Trustee for Fremont** | ) | |
| **Home Trust 2004-B Asset Backed** | ) | |
| **Certificates, Series 2004-B, and REAL** | ) | |
| **HOME SERVICES AND SOLUTIONS,** | ) | |
| **INC.,** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure and Memorandum of Law in Support. (Docs.

11, 12).  Plaintiff filed a Response in Opposition. (Doc. 16).  Defendants elected not to file a

reply brief.  (Doc. 17).

### I.    Factual Background

On July 16, 2014, Plaintiff PLS Investments, LLC ("PLS") commenced litigation against

Defendants OCWEN Loan Servicing, LLC ("Ocwen"), HSBC Bank USA, National Association

("HSBC"), as Trustee for Fremont Home Trust 2004-B Asset Backed Certificates, Series 2004-B

("Fremont"), and Real Home Services and Solutions, Inc. ("RealHome") (collectively

"Defendants"), in the North Carolina General Court of Justice, Ashe County Superior Court.

(State Case No.:  14-CVS-282).  (Doc. 1 / Exh. A). Plaintiff's Complaint alleges Defendants

erroneously and falsely listed its property as a foreclosure property twice – the second time *after*

being placed on notice that Plaintiff PLS was never a borrower of any of the Defendants and that the PLS Lot was not, in fact, subject to foreclosure.

Unless expressly identified as an assertion of the Defendants, the following factual allegations are taken from the Plaintiff's Complaint and are accepted as true for purposes of resolving the instant motion.

On or around March 10, 2008, by way of a North Carolina General Warranty Deed, Plaintiff PLS purchased a parcel of real property located in Jefferson Township of Ashe County, North Carolina, from James Kevin Jordan and his wife, Sherry D. Jordan ("Jordans"). (Compl., ¶¶ 10, 11). The property purchased by PLS is approximately three acres, has a home on it, and is more particularly described in the deed recorded at Book 379, Page 1587, of the Ashe County Registry and identified by the Ashe County Tax Office as parcel ID number 09302-237-004. (Compl., ¶ 10). For purposes of this Memorandum and Order, the undersigned will refer to this parcel as the "PLS Lot."

At the time PLS purchased the property, the Jordans owned two smaller vacant lots adjacent to Plaintiff's PLS Lot. (Compl., ¶ 12). The Jordans' other lots are more particularly described in the deed recorded at Book 392, Page 1943, of the Ashe County Registry as a one-acre lot and another two-acre lot and identified by the Ashe County Tax Office as parcel ID number 09302-237-006A and 09302-237-006B.[1] (Compl., ¶ 12). For purposes of this Memorandum and Order, the undersigned will refer to these parcels as "Jordan Lots A and B."

---

[1] Plaintiff does not identify the parties to this deed but Defendants have attached as Exhibit B to the Motion to Dismiss a deed made on April 24, 2001, and recorded at Book 260, Page 419. (Defs.' Mem. In Supp., Exh. B).

The Jordans' executed a Deed of Trust on or about February 11, 2004 in connection with the real estate described in the Complaint.[2]  The lender under the Jordans' Deed of Trust was originally Fremont Investment and Loan.  (Compl., ¶ 13).  The Deed of Trust was subsequently assigned to Defendant HSBC.  (Compl., ¶ 13).

The Jordans subsequently defaulted on their loan, which was secured by the Deed of Trust.  (Compl., ¶ 14).  On or about September 12, 2012, the Substitute Trustee, David Caudill, on behalf of the Caudill Law Firm, PA, filed an Amended Notice of Substitute Trustee's Sale of Real Estate. (Compl., ¶ 14). This Notice of Sale specifically referenced the two tracts owned by the Jordans bearing parcel ID numbers 09302-237-006A and 09302-237-006B or Jordan Lots A and B.  (Compl., ¶ 14).  On or about October 16, 2012, the Substitute Trustee, acting in his capacity as Substitute Trustee and on behalf of the mortgagee HSBC, sold Jordan Lots A and B at a foreclosure sale.  (Compl., ¶ 15).  A Report of Foreclosure Sale was filed the same day reflecting that HSBC, through Defendant OCWEN, was the highest bidder and purchased Jordan Lots A and B for $705,526.96.  (Compl., ¶ 16).  The Final Report and Account of Foreclosure Sale filed in November 2012 verified that the foreclosure sale was for Jordan Lots A and B, formerly secured by the Deed of Trust assigned to HSBC.  (Compl., ¶ 16).

Following the foreclosure sale of Jordan Lots A and B, in or around late November 2012 or early December 2012, "Defendants HSBC and Ocwen caused a Notice of Eviction to be

_____

[2] Although not explained in the Complaint, the underlying documents integral to the allegations in the Complaint reveal that the Jordans purchased the PLS Lot first in 2000 and purchased the two vacant lots, or Jordan Lots A and B, in 2001.  The 2004 transaction referenced in the Complaint pertained to all three tracts owned by the Jordans, the PLS Lot and Jordan Lots A and B.

Defendants' motion to dismiss provides the relevant documents as exhibits, including the 2000 Jordan Deed for the PLS Lot (Defs.' Exh. A), the 2001 Second Jordan Deed on Jordan Lots A and B (Defs.' Exh. B), and the Jordans' 2004 loan in the amount of $500,000 from Freemont Investment and Loan ("Loan"), which is secured by a promissory note for the same amount payable to Freemont ("Note").  The Note is secured by a Deed of Trust pledging the PLS Lot and Jordan Lots A and B as security to ensure repayment.  (Defs.' Exh. C).

posted by the Ashe County Sheriff's Department upon the Plaintiff's home located on the Plaintiff's property." (Compl., ¶ 18). Defendants HSBC and Ocwen also "listed the Plaintiff's property for sale as a foreclosure sale with the Defendant RealHome," who "acted as an agent of Defendants HSBC and Ocwen." (Compl., ¶ 19). Defendant RealHome advertised the PLS Lot as a foreclosure available for purchase "at a value substantially less than its actual fair market value on numerous foreclosure websites including, but not limited to, Foreclosure.com, Hubzu and Realtytrac." (Compl., ¶ 20). The advertisements included pictures of the exterior and interior of Plaintiff's home. (Compl., ¶ 21). The advertisements represented that the Listing Agent, RealHome, could be contacted via its agent, Linda McCauley. (Compl., ¶ 21).

Plaintiff PLS "has never borrowed money from Fremont Investment & Loan or the Defendant HSBC." (Compl., ¶ 17). Similarly, Plaintiff PLS "has never executed any Deed(s) of Trust or any other type of security instrument [] giving the Defendants the legal right to sell the Plaintiff's property." (Compl., ¶ 17). The PLS Lot has "never been subject to foreclosure or foreclosed upon." (Compl., ¶ 29). Plaintiff has never given any of the Defendants "the right to post any advertisement of the Plaintiff's property on any internet sites or any other print medium for sale." (Compl., ¶ 29).

In December 2012, Plaintiff PLS, through counsel, notified Defendants, through the Substitute Trustee, that "the Plaintiff's home [the PLS Lot] was not part of the property which was subject to foreclosure and that Plaintiff's home should not be listed for sale as a foreclosure." (Compl., ¶ 24). Plaintiff alleges that "[a]ll the Defendants were put on notice and became aware of the unlawful eviction and false advertising of Plaintiff's property. . . ." (Compl., ¶ 25). As a result, Defendants removed the advertisements for the PLS Lot from the internet. (Compl., ¶ 25).

In or around October 2013, Plaintiff learned that Defendants had again posted and advertised the PLS Lot for sale "on numerous foreclosure websites such as Foreclosure.com, Hubzu and Realtytrac." (Compl., ¶ 26). Defendant RealHome, through its broker in charge, Linda McCauley, was designated the Listing Agent. (Compl., ¶ 26). As before, the advertisement included pictures of the exterior and interior of Plaintiff's home. (Compl., ¶ 26). The advertisements "falsely stated" that the home "was for sale and was a foreclosure" and "could be purchased for figures ranging from approximately $350,000 to $600,000." (Compl., ¶ 27).

Plaintiff alleges that the advertisements concerning the PLS Lot were false and that "Defendants caused this false information regarding Plaintiff's property to be disseminated and published throughout the world through the internet." (Compl., ¶¶ 22, 23, 27, 30). As a result, PLS "received offers to purchase the property which are significantly lower than its fair market value." (Compl., ¶ 32). As of the filing of the Complaint, Plaintiff PLS alleges that the PLS Lot "continues to be listed for sale on various websites for a substantially lower value than the actual fair market value." (Compl., ¶ 28). With respect to injury, Plaintiff alleges that "Defendants' false advertisement of the [PLS Lot] at values substantially lower than its fair market value has reduced the fair market value of the Plaintiff's property."[3] (Compl., ¶ 33). Plaintiff PLS further alleges that Defendants' actions in 2013 (the second erroneous foreclosure listing) were "malicious, willful, wanton, and in reckless disregard of the rights and interests of the Plaintiff . . . ." (Compl., ¶ 34). Plaintiff PLS alleges that "Defendants knew, or should have known, in 2013 and continuing thereafter that such advertisements were false and that such advertisements were without any legal authority or justification." (Compl., ¶ 34).

---

[3] PLS represents that the fair market value of the property is "in excess of $1.2 million." (Compl., ¶ 31).

On August 19, 2014, Plaintiff PLS brought this civil action against Defendants asserting claims for Negligence (First Claim for Relief, ¶¶ 1−38), Gross Negligence (Second Claim for Relief, ¶¶ 1−41), and Unfair and Deceptive Trade Practices ("UDTPA"), in violation of N.C. Gen. Stat. § 75-1.1, *et seq*. (Third Claim for Relief, ¶¶ 1−48). Plaintiff's negligence claim asserts that Defendants owed a duty to Plaintiff "to use reasonable care in determining which property they held a valid security interest in" and breached that duty of care in multiple ways by failing to use reasonable care and diligence in investigation and communication amongst each other concerning their security interest and legal rights after the Jordans' default on the adjacent property. (Compl., ¶¶ 35−37). Plaintiff seeks to recover monetary damages from Defendants, including punitive damages pursuant to N.C. Gen. Stat. § 1D-1, *et seq.*, or a treble award pursuant to N.C. Gen. Stat. § 75-16, and attorneys' fees and costs. (Compl., Prayer for Relief, ¶¶ 1−5). Plaintiff requests a jury trial on all issues. (Compl., Prayer for Relief, ¶ 6).

On August 19, 2014, Defendants timely removed this action from state court to this United States District Court. (Doc. 1, ¶ 1). Federal subject matter jurisdiction over this action is supplied by the diversity of citizenship, 28 U.S.C. § 1332.[4] (Doc. 1, ¶¶ 2−14). The statutory criteria for removal are also satisfied, 28 U.S.C. § 1441. (Doc. 1, ¶¶ 2−14).

On August 29, 2014, Defendants moved to dismiss Plaintiff's Second and Third Claims for Relief alleging gross negligence and violation of the UDTPA pursuant to Rule 12(b)(6) of the

---

[4] Initially, a civil action alleging substantially the same facts was brought by PLS and its two members, Phil Stevens and Larry Stone. *See PLS Investments, LLC, Phil Stevens, Larry Stone v. Ocwen Loan Servicing, LLC, HSBC Bank USA, National Association, as Trustee for Fremont Home Trust 2004-B Asset Backed Certificates, Series 2004-B, and Real Home Services and Solutions, Inc., North Carolina General Court of Justice, Ashe County Superior Court, No. 13-CVS-456.* (Doc. 1, n. 1). Defendants also removed the original lawsuit to this Court on February 6, 2014. *See* 5:14CV21, Doc. 1. The original lawsuit, which also included facts alleging negligent and intentional misrepresentation and libel *per quod*, was voluntarily dismissed by Plaintiffs on March 20, 2014. *See* 5:14CV21, Doc. 12. (Defs.' Mem. In Supp., 11−12).

Federal Rules of Civil Procedure. (Docs. 11, 12). Plaintiff's First Claim for Relief alleging Negligence is not being challenged by Defendants.[5] In support of the Motion to Dismiss, Defendants contend that the conduct complained of by Plaintiff, at best, amounts to ordinary negligence as opposed to gross negligence or an unfair or deceptive trade practice. Defendants identify a "scrivener's error and mutual mistake of the Jordans and Freemont Investment and Loan." (Defs.' Mem. In Supp., 3). More specifically, Defendants contend that "the parcel identification number and legal description for the [PLS Lot] were omitted from the Deed of Trust." (Defs.' Mem. In Supp., 3). According to Defendants, although the Note pledged all of the property originally owned by the Jordans (the PLS Lot, and Jordan Lots A and B) as collateral, the Deed of Trust, which expressly referenced the street address for the PLS Lot, inadvertently omitted the parcel identification number and legal description for the PLS Lot.[6] (Defs.' Mem. In Supp., 3).

Defendant Fremont transferred all of its right, title and interest in and to the Note and Deed of Trust to Defendant HSBC. (Compl., ¶ 13; Defs.' Mem. In Supp., 3). Defendant Ocwen was the servicer of the Loan. (Defs.' Mem. In Supp., 3). Defendants claim that "[w]hen HSBC

---

[5] Defendants acknowledge that a mistake or error was made in 2012. Defendants do not admit or concede that they made "any false, deceptive, or misleading statements." (Defs.' Mem. In Supp., 7 n. 10).

[6] Defendants contend that it was the Jordans' intent to secure *all of the property* by the Deed of Trust because the address of the property being secured was identified as "374 Bower Lane, Jefferson, North Carolina, 28640" – the address of the PLS Lot which was previously the Jordans' home address of record. (Defs.' Mem. In Supp., 3). Aside from failing to include a description of the PLS Lot on Attachment A to the Deed of Trust, the deed refers to the Parcel ID Numbers of Jordan Lots A and B (not the PLS Lot) and merely states, "which *currently* has the [street] address of 374 Bower Lane, Jefferson, North Carolina, 28640." (Defs.' Mem. In Supp., Exh. C at 3) (emphasis provided). In any event, the background gleaned from Defendants' filing, and the contentions of Defendants concerning the nature of the error, are not considered by the Court in resolving the Rule 12(b)(6) Motion, but are included for informational purposes only.

[] acquired the Loan, it was unaware of the scrivener's error on the Deed of Trust and believed that the Deed of Trust secured [the PLS Lot]." (Defs.' Mem. In Supp., 3).

Defendants assert that after the Jordans defaulted on the Loan, the state foreclosure proceeding pursuant to N.C. Gen. Stat. § 45-21.16, *et seq.*, was initiated for the purpose of selling the PLS Lot and Jordan Lots A and B because HSBC believed the Deed of Trust secured all three lots. (*See* Ashe County File No.: 09 SP 146 ("Foreclosure Proceeding")). (Defs.' Mem. In Supp., 3). Defendant HSBC reportedly believed that it purchased the PLS Lot along with the two vacant lots.

Defendants represent that neither Ocwen nor HSBC were aware of the March 10, 2008 conveyance from the Jordans to PLS. (Defs.' Mem. In Supp., 3−4). Consequently, after the foreclosure sale, operating with the understanding that HSBC purchased the PLS Lot in addition to Jordan Lots A and B, HSBC retained RealHome to list the property actually owned by Plaintiff as a foreclosure sale. (Defs.' Mem. In Supp., 4).

Defendants' Motion to Dismiss Plaintiff's Second and Third Claims for Relief is ripe for disposition by the Court.

## II.    Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the legal and factual sufficiency of a complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). A complaint must plead facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009). In evaluating whether a claim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the plaintiff, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of

further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." *Id*. A sufficient pleading must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Papasan v. Allain*, 478 U.S. 265, 268 (1986).

## III. Discussion

The question presented by Defendants' Rule 12(b)(6) Motion is whether Plaintiff's well-pled allegations plausibly state claims for gross negligence or unfair and deceptive trade practice under North Carolina law.[7]

### A. Second Claim For Relief Alleging Gross Negligence

In North Carolina, gross negligence is defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others."" *Yancey v. Lea*, 550 S.E.2d 155, 157−58 (N.C. 2001) (internal citations omitted). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Yancey*, 550 S.E.2d at 157 (internal citations omitted).

"[T]he difference between ordinary negligence and gross negligence is substantial." *Yancey*, 550 S.E.2d at 157. As explained by the North Carolina Supreme Court,

> Negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence. Wantonness, on the other hand, connotes *intentional wrongdoing*. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others. *Hinson v. Dawson*, 92 S.E.2d 393, 397 (N.C. 1956) (emphasis added).

---

[7] In this diversity action, North Carolina substantive law governs. *See generally*, *Caper Corp. v. Wells Fargo Bank, N.A.*, 2014 WL 3511928, * 5 (4th Cir. 2014) (North Carolina's choice of law rules); *see also Harco Nat'l Ins. Co. v. Grant Thornton, LLP*, 698 S.E.2d 719, 724 (N.C. App. 2010) (as for claims sounding in tort, "the law of the state where the [complainant] was injured controls the outcome of the claim.") (internal citation omitted).

Thus, the difference between ordinary negligence and gross negligence is not in degree or magnitude of inadvertence or carelessness, but rather is [in] intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the *act* is done purposely and with knowledge that such act is a breach of duty to others, *i.e.*, a *conscious* disregard of the safety of others. An act or conduct moves beyond the realm of negligence when the *injury or damage* itself is intentional. *Brewer v. Harris*, 182 S.E.2d 345, 350 (N.C. 1971).

*Yancey*, 550 S.E.2d 155, 158 (N.C. 2001) (emphases in original).[8]

Here, Defendants argue that, accepting Plaintiff's claim as true, there is no allegation that Defendants *intentionally* or *purposely* sought to lower the property value of the PLS Lot.[9] (Defs.' Mem. In Supp., 10). It is true that the facts alleged within Plaintiff's Complaint do not allege intentional wrongdoing or wicked purpose. There is no allegation that Defendants harbored animus towards PLS or its members or that Defendants stood to gain anything by publishing the second forfeiture listing. Nonetheless, according to Plaintiff, Defendants' second offense "raises an inference that the Defendant's[sic] actions were deliberate, or at the very least, in conscious or reckless disregard for the Plaintiff's rights and property." (Pl.'s Mem. In Opp'n, 6).

---

[8] In *Kelly v. United States*, the court provides an overview of North Carolina case law and describes the typical gross negligence cases as involving motor vehicles and particularly, "where a defendant driver was intoxicated, driving at excessive speeds, or engaged in a racing competition." *Kelly v. United States*, 2014 WL 4098943, * 3 (E.D.N.C. August 18, 2014) (internal citations omitted). Unlike the majority of gross negligence cases discussed in *Kelly*, there is no factual allegation here that anyone's physical safety was placed at risk. *See Kelly*, 2014 WL 4098943, ** 2−3 (plaintiff failed to state a claim for gross negligence where there was no allegation that defendant's employees acted with the requisite mental state; facts tended to show that defendant's employees lacked knowledge of an unsafe condition posed to the fifteen-year-old Junior ROTC plaintiff who was injured during a training activity on an obstacle course at Marine Corps facility).

[9] Defendants point to the fact that as adjacent property owners, the Defendants, like Plaintiffs, have a mutual interest in preserving / maintaining the fair-market-value of the PLS Lot.

Allowing all reasonably supportable inferences in Plaintiff's favor, the Court agrees with Plaintiff on this point. The fact remains that Defendants repeated the mistake *after* learning of the error within the Deed of Trust and *after* learning that the Jordans conveyed the PLS Lot prior to the initiation of the foreclosure proceeding.[10] In short, the Court finds, as a matter of law, Plaintiff alleges sufficient factual matter to plausibly show a "conscious or reckless disregard" for Plaintiff's property rights.

B. Third Claim For Relief Alleging UDTPA Violation

Under North Carolina's Unfair and Deceptive Trade Practices Act, Plaintiff PLS must allege facts tending to show that: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby."[11] *Gupton v. Son-Lan Development Co., Inc.*, 695 S.E.2d 763, 771 (N.C. App. 2010) (quoting *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 49 (N.C. App. 2009)). The concepts of deceptiveness and unfairness are further explained below:

> If a practice has the capacity or tendency to deceive, it is deceptive for the purposes of the statute. "Unfairness" is a broader concept and includes the concept of "deception." A practice is unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, *or substantially injurious to consumers*.

---

[10] These issues may be more appropriately disposed of at summary judgment. Given the assignment from Fremont to HSBC, the role of the loan servicer Ocwen, and involvement of the Substitute Trustee in the state foreclosure proceeding, Plaintiff may or may not be hard-pressed to establish "conscious or reckless disregard" as opposed to a failure to exercise ordinary care by Defendants (or any specific Defendant).

[11] "The legislative intent in enacting Chapter 75 of the North Carolina General Statutes was to establish an effective cause of action for aggrieved consumers and to provide a method to maintain ethical standards of dealings between persons engaged in business and promote good faith thereby achieving the ultimate goal of protecting the consuming public." *Investors Title Ins. Co. v. Herzig*, 413 S.E.2d 268, 271 (N.C. 1992) (citing *Marshall v. Miller*, 276 S.E.2d 397 (N.C. 1981); *Hardy v. Toler*, 218 S.E.2d 342 (N.C. 1975); *Bunting v. Perdue, Inc.*, 611 F.Supp. 682 (E.D.N.C. 1985)).

*Mitchell v. Linville*, 557 S.E.2d 620, 623 (N.C. App. 2001) (citations omitted) (emphasis added).

"It is not necessary that an act or practice be both unfair and deceptive in order to be violative of the statute." *Gupton*, 695 S.E.2d at 771 (internal citation omitted). "Whether an act or practice is unfair or deceptive under this section is a question of law for the court." *Id.* (quoting *Carcano*, 684 S.E.2d at 50.)

As for Plaintiff's § 75-1.1 claim, the Court contemplates whether Defendants' conduct, as alleged within the Complaint, could plausibly be deemed "unfair," or particularly "substantially injurious to customers."[12] *Mitchell*, 557 S.E.2d at 623. Accepting Plaintiff's factual allegations as true, "Defendants had actual notice of their wrongful conduct in 2012 and continue to falsely advertise the Plaintiff's property."[13] (Compl., ¶ 39). As for injury, Plaintiff alleges that the fair-market-value of its property has declined as a result of Defendants' conduct. In addition, Plaintiff bases the unfair and deceptive trade practices claim in part on the Defendants' notice of eviction in 2012. (Compl., ¶ 42).

Given the objectives of § 75-1.1 and broad application of the statute, the undersigned is inclined to allow this claim to proceed and provide Plaintiff an opportunity to conduct discovery. While there appears to be no doubt that the Defendants' original error was inadvertent, further development of the record through discovery should show (i) whether Defendants took appropriate cautionary steps, if any, to protect Plaintiff after curing the first "false" foreclosure sale listing / eviction notice; (ii) what led Defendants to make the same mistake less than a year

---

[12] Unlike North Carolina's gross negligence jurisprudence, there is no requirement under N.C. Gen. Stat. § 75-1.1 that Defendants deliberately sought to injure Plaintiff or acted with "conscious or reckless disregard."

[13] According to the Complaint, the error has yet to be completely remedied in that the property continues to be listed as a foreclosure on certain foreclosure websites.

later.  Viewing the facts alleged in the light most favorable to Plaintiff, PLS's Complaint alleges sufficient facts to plausibly state a claim of unfair and deceptive trade practice.

### IV.     Order

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is hereby **DENIED** as to Plaintiff's Second Cause of Action alleging gross negligence.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is hereby **DENIED** as to Plaintiff's Third Cause of Action alleging violation of N.C. Gen. Stat. § 75-1.1, *et seq*.

Signed: April 1, 2015

Richard L. Voorhees
United States District Judge